# United States Court of Appeals
### FIFTH CIRCUIT
### OFFICE OF THE CLERK

LYLE W. CAYCE  
CLERK

TEL. 504-310-7700  
600 S. MAESTRI PLACE,  
Suite 115  
NEW ORLEANS, LA 70130

October 04, 2023

Mr. Philip Devlin  
Western District of Texas, El Paso  
United States District Court  
525 Magoffin Avenue  
Room 108  
El Paso, TX 79901-0000

      No. 22-50647    USA v. Armendariz  
                             USDC No. 3:21-CR-782-1

Dear Mr. Devlin,

Enclosed is a copy of the judgment issued as the mandate and a copy of the court's opinion.

                                   Sincerely,

                                   LYLE W. CAYCE, Clerk

                                   By: _____  
                                   Renee S. McDonough, Deputy Clerk  
                                   504-310-7673

cc:  
      Mr. Charles E. Fowler Jr.  
      Mr. Joseph H. Gay Jr.  
      Ms. Mary Stillinger



# United States Court of Appeals
# for the Fifth Circuit

Certified as a true copy and issued
as the mandate on Oct 04, 2023

Attest: *Lyle W. Cayce*
Clerk, U.S. Court of Appeals, Fifth Circuit

United States Court of Appeals
Fifth Circuit
**FILED**
August 29, 2023
Lyle W. Cayce
Clerk

No. 22-50647

UNITED STATES OF AMERICA,

*Plaintiff—Appellee,*

*versus*

VIRGINIA ESTRADA ARMENDARIZ,

*Defendant—Appellant.*

---

Appeal from the United States District Court
for the Western District of Texas
USDC No. 3:21-CR-782-1

---

Before KING, SMITH, and ELROD, *Circuit Judges.*

### JUDGMENT

This cause was considered on the record on appeal and was argued by counsel.

IT IS ORDERED and ADJUDGED that the judgment of the District Court is AFFIRMED.

# United States Court of Appeals for the Fifth Circuit

United States Court of Appeals
Fifth Circuit
**FILED**
August 29, 2023
Lyle W. Cayce
Clerk

No. 22-50647

United States of America,

*Plaintiff—Appellee,*

versus

Virginia Estrada Armendariz,

*Defendant—Appellant.*

Appeal from the United States District Court
for the Western District of Texas
USDC No. 3:21-CR-782-1

Before King, Smith, and Elrod, *Circuit Judges.*

Jennifer Walker Elrod, *Circuit Judge:*

Virginia Estrada Armendariz, a lawful permanent resident of the United States, was charged with importation of a controlled substance in violation of 21 U.S.C. § 952(a). Her lawyer told her that if she pleaded guilty, it was "very likely" that she would be deported. She nonetheless entered the plea. Armendariz then learned that her offense did not just possibly make her deportable, it automatically did so. *See* 8 U.S.C. § 1227(a)(2)(B)(i). She then moved to withdraw her plea, alleging that if she had known the full scope of the immigration consequences of her plea, she would not have entered it.

No. 22-50647

The district court denied Armendariz's motion and sentenced her. Armendariz appealed.

It is deficient performance under the Sixth Amendment for a criminal defense lawyer not to tell an alien client that his or her offense will have immigration consequences. *Padilla v. Kentucky*, 559 U.S. 356, 369 (2010). However, the kind of warning that the lawyer must provide is not entirely settled. This case presents the following question: when an offense makes an alien presumptively deportable, does a lawyer's warning of "very likely" deportation satisfy the right to effective assistance of counsel?

We hold that it does. When defense counsel tells an alien client that a conviction will have serious immigration consequences, including "very likely" deportation, that defendant has received sufficient advice to make an informed plea decision, as required by the Sixth Amendment. The district court therefore did not abuse its discretion in denying Armendariz's motion to withdraw her plea, and the judgment is AFFIRMED.

I

Armendariz is a 53-year-old woman who has been a legal permanent resident of the United States since 1994. In 2021, Armendariz responded to a Facebook advertisement offering $100 for her to drive clothes, shoes, and cash from a store in El Paso, Texas, to a store in Juarez, Mexico. Armendariz was suspicious that this was actually a solicitation to transport drugs, but she "decided to go ahead with the job and take the risk due to lack of work and needing money." She met the job advertisers in Mexico, who outfitted her truck with a GPS tracker and told her to drive to El Paso to pick up the inventory that she would then bring back to Mexico.

When Armendariz attempted to cross the border and reenter Texas, a United States Customs and Border Protection narcotics-detecting dog alerted to the presence of drugs in Armendariz's truck. The officers

No. 22-50647

inspected the truck and found many bundles of marijuana hidden in the hood, engine, front doors, back seat, and tailgate.

Armendariz was charged in the Western District of Texas with knowingly and intentionally conspiring to import 43.9 kilograms of marijuana. Armendariz initially pleaded not guilty.

However, Armendariz later decided to enter a guilty plea as to count one, importation of a controlled substance in violation of 21 U.S.C. § 952(a). Before Armendariz entered the plea, she discussed the issue of immigration consequences at length with the magistrate judge (as required by Federal Rule of Criminal Procedure 11). The magistrate judge told her, "Very unfortunately, there's immigration consequences that take place if you plead guilty." He then listed a litany of immigration-related ramifications, including (1) likely deportation, (2) *very* likely deportation, (3) not being allowed to stay in the United States, (4) prison time for illegal reentry after deportation, (5) denial of U.S. citizenship, and (6) possible relief from an immigration judge. He asked Armendariz whether she understood these consequences and whether she had discussed them with her attorney. She said yes to both questions.

The plea agreement, which Armendariz said she understood, also specifically covered the "immigration consequences of conviction." Listed in its own bolded, underlined, and all-caps heading on the second page of the agreement, the immigration-related portion of the plea noted, among other things, that:

- "Defendant recognizes that pleading guilty may affect Defendant's immigration status if Defendant is not a citizen of the United States";
- "Under federal law, a broad range of criminal offenses warrant removal from the United States, the denial or cancellation of certain immigration benefits, and/or denaturalization,

3

No. 22-50647

including the offense(s) to which Defendant has agreed to plead guilty pursuant to this Plea Agreement";

- "Defendant's offense(s) of conviction presumptively require(s) the removal of a defendant who is not a U.S. Citizen"; and

- "Defendant nevertheless affirms that Defendant wants to enter a plea of guilty, regardless of any immigration or naturalization consequences that may result from the guilty plea and even if those consequences include Defendant's removal from the United States or denaturalization."

Despite receiving these warnings, Armendariz stated that she understood the agreement and entered the plea. The district court judge accepted it. Two months later, Armendariz's counsel withdrew, and the attorney that is currently representing her substituted in.

Under the advice of her new counsel, Armendariz moved to withdraw her guilty plea. Armendariz alleged in her motion that she had not realized when pleading guilty that she was pleading to an "aggravated felony" that would make her automatically deportable. 8 U.S.C. § 1227(a)(2)(A)(iii). And she argued that under Supreme Court and Fifth Circuit precedent, "when the deportation consequence [of a guilty plea] is truly clear, . . . the duty to give correct advice is equally clear." *United States v. Urias-Marrufo*, 744 F.3d 361, 366 (5th Cir. 2014) (quoting *Padilla*, 559 U.S. at 369).

Armendariz said that although the lawyer representing her at the time of the plea agreement had warned her that there would be immigration consequences, he had not accurately characterized the gravity of those consequences. Armendariz alleged that at the time of agreeing to the plea, she had been under the false impression that she could at least fight to keep her lawful permanent resident status after the criminal case resolved. Armendariz believed this because her prior attorney had referred

4

No. 22-50647

Armendariz's daughter to an immigration lawyer, and the immigration lawyer had told Armendariz's daughter that she could represent Armendariz when the criminal case was resolved.

The district court denied Armendariz's motion to withdraw her guilty plea. After hearing arguments, the judge announced his findings from the bench. The judge's full statement was:

> The actual holding in *Padilla* says there is a duty that, in essence—and I'm paraphrasing—there is a duty that cannot be saved at the plea colloquy for the defendant to affirmatively state—affirmatively state that discussions were had with defense lawyer about the consequences of the plea of guilty.
>
> Ms. Armendariz unequivocally stated that she had those discussions with her lawyer. And this is not a case—reading the transcript of the proceedings before Judge Castaneda, he did exactly what he was supposed to do. He wasn't saving the case for [Armendariz's counsel at the plea stage]. He simply asked, This may happen, and he stated that to her. Are you aware of that? Yes. Did you discuss that with your lawyer? And she unequivocally said yes. That's the *Padilla* duty.
>
> So I'm finding that, based on the evidence before the Court, that [Armendariz's counsel] by Ms. Armendariz' own words informed her that there would be—that there were likely to be—there could be immigration consequences to her plea of guilty, and the judge simply confirmed that in his plea colloquy. So the motion to withdraw the plea of guilty is denied.

The district court then sentenced Armendariz to three years' probation. Armendariz timely appealed.

II

We review the denial of a motion to withdraw a guilty plea for abuse of discretion. *United States v. Urias-Marrufo*, 744 F.3d 361, 364 (5th Cir. 2014). "A district court abuses its discretion if it bases its decision on an

Case 3:21-cr-00782-FM Document 67 Filed 10/04/23 Page 8 of 16
Case: 22-50647 Document: 00516919296 Page: 6 Date Filed: 10/04/2023

No. 22-50647

error of law or a clearly erroneous assessment of the evidence." *Id.* (quoting *United States v. Mann*, 161 F.3d 840, 860 (5th Cir. 1998)). The denial of a motion to withdraw a guilty plea that is based on a theory of ineffective assistance of counsel is reviewable on direct appeal, not just in collateral proceedings. *Id.* at 367.

### III

When negotiating a plea, a defense lawyer's "failure to advise a lawful permanent resident alien of likely deportation implicates the Sixth Amendment right to effective assistance of counsel." *United States v. Kayode*, 777 F.3d 719, 723 (5th Cir. 2014) (first citing *Padilla v. Kentucky*, 559 U.S. 356 (2010); and then citing *Strickland v. Washington*, 466 U.S. 668 (1984)). This *Padilla* violation, if proven during a motion to withdraw a guilty plea, "compels the court to permit the defendant to withdraw the guilty plea." *Urias-Marrufo*, 744 F.3d at 369.

In absence of satisfying *Padilla*'s bright-line rule, a defendant may withdraw a guilty plea if he or she "can show a fair and just reason for requesting the withdrawal." Fed. R. Crim. P. 11(d)(2)(B). In our circuit, this Rule 11 standard is evaluated under a seven-factor balancing test. *United States v. Carr*, 740 F.2d 339, 343–44 (5th Cir. 1984). The district court specifically and carefully discussed these factors during the hearing on Armendariz's motion, and the district court did not abuse its discretion in finding that Armendariz had not satisfied them.

### A

*Padilla* is a gloss on *Strickland*'s familiar two-part standard for evaluating claims of ineffective assistance of counsel. Under *Strickland*, the court first asks whether counsel's representation "fell below an objective standard of reasonableness." *Strickland*, 466 U.S. at 688. If so, we then ask whether this deficiency prejudiced the defendant. *Id.* at 693.

No. 22-50647

1

*Padilla* holds that prong one is satisfied if, during plea negotiations, the defense lawyer does not inform the defendant "whether his plea carries a risk of deportation." *Padilla*, 559 U.S. at 374. Specifically, the Court stated that "when the deportation consequence is truly clear, . . . the duty to give correct advice is equally clear." *Id.* at 369. Prong two is satisfied if the defendant can demonstrate a "reasonable probability that, but for [his] counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Lee v. United States*, 582 U.S. 357, 371 (2017) (alteration in original) (quoting *Hill v. Lockhart*, 474 U.S. 52, 59 (1985)).

There is some ambiguity about what specific words Armendariz's lawyer used when explaining to her the immigration consequences of the plea. But the district court's factual finding—which is reviewed only for clear error—suggests the following bottom line: Armendariz's lawyer put her on notice of the risk of serious immigration consequences, including deportation.[1] The actual legal result of Armendariz's plea is that she is mandatorily deportable. *See* 8 U.S.C. § 1227(a)(2)(A)(iii);[2]

---

[1] The district judge seemed to incorporate by reference the magistrate judge's plea colloquy into the factual findings made in denying the motion. But when the magistrate judge asked in his colloquy if Armendariz had discussed "these consequences" with her attorney, this would seem to include all of the following consequences that the magistrate judge had listed just beforehand: (1) likely deportation, (2) *very* likely deportation, (3) not being allowed to stay here, (4) prison time for illegal reentry if deported, (5) denial of U.S. citizenship, and (6) possible relief from an immigration judge. The ambiguity between those conflicting consequences is perhaps made starker by the fact that Armendariz participated in the proceeding through a Spanish-language interpreter.

[2] Making deportable any alien convicted of an "aggravated felony," where that term is defined to include "illicit trafficking in a controlled substance," 8 U.S.C. § 1101(a)(43)(B).

Case 3:21-cr-00782-FM   Document 67   Filed 10/04/23   Page 10 of 16
Case: 22-50647      Document: 00516919296      Page: 8      Date Filed: 10/04/2023

No. 22-50647

8 U.S.C. § 1227(a)(2)(B)(i).[3] This raises the question of whether the lawyer provided Armendariz with "correct advice" about a clear immigration consequence, as *Padilla* requires. *Padilla*, 559 U.S. at 369.

We hold that he did, for two reasons. First, even if Armendariz's lawyer's advice could have been more accurate, his warning about immigration consequences still went far and beyond what the lawyers in *Padilla* and its progeny told their clients. And second, it may have been correct for Armendariz's counsel to say that deportation was "very likely" as opposed to "certain."

a

The message that Armendariz's lawyer communicated to her, regardless of the particular words used, was not at all like what the lawyer in *Padilla* told his client. Like this case, *Padilla* involved a lawful permanent resident who became deportable after pleading guilty to transporting a large amount of marijuana. *Padilla*, 559 U.S. at 359 & n.1. But Padilla's lawyer "not only failed to advise him of this consequence prior to his entering the plea," the lawyer "also told him that he 'did not have to worry about immigration status since he had been in the country so long.'" *Id.* at 359 (citation omitted).

The advice provided in *Padilla* was not just an understatement of the consequences, as Armendariz contends was the case with her advice. Padilla's lawyer was flat-out wrong. Telling Padilla not to worry about his immigration status did more than fail to put Padilla on notice. It affirmatively misled him. By contrast, Armendariz's lawyer at least warned her of "very

---

[3] Making deportable any alien convicted of a controlled-substance offense, "other than a single offense involving possession for one's own use of 30 grams or less of marijuana." 8 U.S.C. § 1227(a)(2)(B)(i).

Case 3:21-cr-00782-FM Document 67 Filed 10/04/23 Page 11 of 16
Case: 22-50647 Document: 00516919296 Page: 9 Date Filed: 10/04/2023

No. 22-50647

likely" deportation, which would not have provided Armendariz with the same false sense of security that Padilla was given.

The Supreme Court's most-recent examination of *Padilla* also shows that Armendariz's lawyer's advice was different in kind from that provided by constitutionally deficient counsel. In *Lee v. United States*, 582 U.S. 357 (2017), a lawful permanent resident pleaded guilty to an offense that made him automatically deportable after his lawyer told him that "the Government would not deport him if he pleaded guilty." *Lee*, 582 U.S. at 360.

Our court's cases have held similarly. In *United States v. Kayode*, 777 F.3d 719 (5th Cir. 2014), a naturalized citizen pleaded guilty to a deportable and naturalization-stripping offense because "his attorneys never warned him prior to his sentencing hearing that he could lose his citizenship . . . and never indicated that [he] might be deported." *Kayode*, 777 F.3d at 723. And in *United States v. Urias-Marrufo*, 744 F.3d 361 (5th Cir. 2014), an alien subject to presumptive deportation after pleading guilty had discussed only "the *possible* adverse immigration consequences of pleading guilty." *Urias-Marrufo*, 744 F.3d at 369; *see also id.* at 368 ("Urias correctly argues that, under *Padilla*, she was required to be advised of the certain deportation consequences of her plea prior to her plea hearing.").

To summarize: The *Lee* lawyer gave affirmatively wrong advice ("no deportation"). The *Kayode* lawyer gave no advice. And the *Urias-Marrufo* lawyer gave weak or middling advice ("possible immigration consequences"). None of those scenarios resemble the conversations that Armendariz had with her lawyer. On the most coherent reading of the district court's factfinding, Armendariz's lawyer (as well as the magistrate

No. 22-50647

judge and the plea agreement) warned her that her deportation would be *very likely* if she pleaded guilty to importing marijuana.[4]

The teaching of *Padilla* is "how critical it is for counsel to inform her noncitizen client that he faces a risk of deportation." *Padilla*, 559 U.S. at 373–74; *see also Urias-Marrufo*, 744 F.3d at 369 (Garza, J., specially concurring) (explaining why *Padilla* does not clearly require "counsel to advise that deportation is a *certain* consequence of a guilty plea"). Armendariz's lawyer did more than that. He put Armendariz on notice that she faced the "very likely" risk of deportation. If maintaining her immigration status was dispositive in deciding whether to take the plea, Armendariz had ample warning to inquire more about that risk.

---

[4] Armendariz's lawyer also referred Armendariz to an immigration attorney. This could give rise to the inference—though not one argued for by the United States—that Armendariz's lawyer satisfied his *Padilla* duty through delegation to a subject-matter expert. However, we have said that the objectively reasonable assistance prong of *Padilla* is concerned with "whether the defendant was informed *by the defendant's counsel*" of the relevant immigration consequences. *Urias-Marrufo*, 744 F.3d at 369.

Our prior holdings that immigration consequences must be relayed by the defense lawyer him or herself comports with how Justice Alito contemporaneously interpreted the *Padilla* majority opinion. *Padilla*, 599 U.S. at 375 (Alito, J., concurring in the judgment) (taking the position that referrals to immigration lawyers would satisfy prong one of *Strickland*, but noting that the majority opinion "nevertheless holds that a criminal defense attorney must provide advice in this specialized area").

And the Supreme Court has more recently noted that immigration-related warnings that are provided by people other than the defense lawyer may be more relevant to the second prong of the analysis (prejudice) than to the first prong (fulfillment of duty). *See Lee v. United States*, 582 U.S. 357, 369 n.4 (2017) ("Several courts have noted that a judge's warnings at a plea colloquy may undermine a claim that the defendant was prejudiced by his attorney's misadvice." (citing, among other cases, *United States v. Kayode*, 777 F.3d 719, 728–29 (5th Cir. 2014))).

No. 22-50647

b

The analysis in the immediately preceding section is based on the premise that it was technically inaccurate for Armendariz's lawyer to tell her that removal was only "very likely," when she would in fact be facing presumptive deportability. That premise may not be true. After all, an alien's being made certainly *deportable* is not the same as being certainly *deported*. The Seventh Circuit noted in 2016 that "not all aliens convicted of aggravated felonies are deported." *United States v. Chezan*, 829 F.3d 785, 787 (7th Cir. 2016). This is because some of them "are overlooked by overworked immigration authorities and . . . some of them successfully plead deferral or withholding of removal because there is a serious risk of their being tortured or killed if returned to their country of origin." *Id.* Falling within one or more classes of deportable aliens does not categorically eliminate the availability of asylum relief or protection under the Convention Against Torture. *See Efe v. Ashcroft*, 293 F.3d 899, 903 (5th Cir. 2002). Armendariz's counsel could not have made a definitive statement about Armendariz's chances of removal without analyzing the applicability of all other forms of relief.

The Supreme Court made a similar point this year in *United States v. Texas*, 143 S. Ct. 1964 (2023). In that case, the Court held that Texas and Louisiana lacked standing to challenge the federal government's decision to arrest fewer criminal noncitizens pending their removal because the Executive Branch "retains discretion over whether to remove a noncitizen from the United States." *Id.* at 1972. And Secretary of Homeland Security Mayorkas's new immigration-enforcement guidelines would deprioritize arresting people like Armendariz, who are not "suspected terrorists or dangerous criminals, or who have unlawfully entered the country only recently." *Id.* at 1968; *see also id.* at 1989 (Alito, J., dissenting) ("The Court holds Texas lacks standing to challenge a federal policy that inflicts

Case 3:21-cr-00782-FM Document 67 Filed 10/04/23 Page 14 of 16
Case: 22-50647 Document: 00516919296 Page: 12 Date Filed: 10/04/2023

No. 22-50647

substantial harm on the State and its residents by releasing illegal aliens with criminal convictions for serious crimes.").

Whether Armendariz's becoming deportable would *certainly* lead to her removal from the country involves not only what the relevant statutes say. It also depends on what the Executive Branch's current enforcement priorities are. For a lawyer to provide his or her client an answer with 100% certainty in the face of these shifting and hard-to-predict factors might not be accurate. Saying merely "very likely" could be closer to the truth.

\* \* \*

Armendariz's lawyer provided objectively reasonable representation. Even assuming *arguendo* that a warning of serious immigration consequences and "very likely" deportation was not perfectly accurate advice, it still performed the advocacy function that *Padilla* demands: putting noncitizen clients on notice that their conviction could have an important impact on their immigration status. And it is not clear that such advice is inaccurate, given the complex and discretionary factors underpinning the relationship between being deportable and being deported. Either way, Armendariz received the effective assistance of counsel that the Sixth Amendment guarantees her.

2

Because Armendariz received effective assistance of counsel, we do not reach *Strickland*'s second prong. If there was no constitutionally deficient performance by the attorney, then there can be no prejudice resulting from constitutionally deficient performance.

B

Although we hold that there was no *Padilla* violation, we must still review the district court's Rule 11 analysis. Under Rule 11 of the Federal

Case 3:21-cr-00782-FM Document 67 Filed 10/04/23 Page 15 of 16
Case: 22-50647 Document: 00516919296 Page: 13 Date Filed: 10/04/2023

No. 22-50647

Rules of Criminal Procedure, "[a] defendant may withdraw a plea of guilty . . . after the court accepts the plea, but before it imposes sentence if . . . the defendant can show a fair and just reason for requesting the withdrawal." Fed. R. Crim. P. 11(d)(2)(B). This court has provided a multi-factor balancing test for determining whether fairness and justice support granting a defendant's request to withdraw:

> (1) whether or not the defendant has asserted his innocence; (2) whether or not the government would suffer prejudice if the withdrawal motion were granted; (3) whether or not the defendant has delayed in filing his withdrawal motion; (4) whether or not the withdrawal would substantially inconvenience the court; (5) whether or not close assistance of counsel was available; (6) whether or not the original plea was knowing and voluntary; and (7) whether or not the withdrawal would waste judicial resources . . . .

*United States v. Carr*, 740 F.2d 339, 343–44 (5th Cir. 1984) (footnotes omitted).

The district court has broad discretion in evaluating these factors. *Urias-Marrufo*, 744 F.3d at 364–65 ("We find at the outset that the district court did not abuse its broad discretion with respect to its findings on the other five factors, and we turn our attention to her critical points."). As such, we turn our focus to the factors that were actually disputed by the parties: whether Armendariz received close assistance of counsel and whether the original plea was knowing and voluntary. The district court did not abuse its discretion in finding that both were satisfied.

As to the first factor, the "knowing and voluntary" analysis is "inextricably tied" to the ineffective assistance of counsel claim. *Id.* at 365. As such, much of the previous *Padilla* discussion can be imported into our Rule 11 analysis. The district court's careful examination of the issue was a proper application of its discretion.

No. 22-50647

The second factor—whether a defendant received close assistance of counsel—requires more examination because it "is distinct" from the effective assistance of counsel analysis under the Sixth Amendment. *Id.* "Counsel's assistance may be close without being effective." *Id.* at 366. We have "previously found that close assistance of counsel was available where counsel negotiated a plea agreement, filed motions, discussed the case with the defendant, and explained the defendant's rights and the weight of the evidence." *United States v. Strother*, 977 F.3d 438, 445 (5th Cir. 2020). The same is true "where counsel was available throughout the proceedings and the defendant expressed satisfaction with counsel." *Id.*

Most of these points apply here. During her plea colloquy with the magistrate judge, Armendariz stated that her lawyer had translated the plea agreement and explained it to her, had discussed the sentencing guidelines' application to her case, and that she was satisfied with the assistance she had received from her lawyer. Under this court's precedent, that likely means Armendariz received close assistance of counsel, even assuming *arguendo* that the assistance of that counsel was ineffective as to warning of the immigration consequences of the plea.

The district court's detailed attention to the Rule 11 factors during the hearing suggests that the court did not abuse its discretion in finding the factors to be satisfied.

\* \* \*

The district court did not abuse its discretion in denying Armendariz's motion to withdraw her guilty plea. First, Armendariz's counsel provided her with effective assistance under *Padilla*. Second, the district court properly evaluated the Rule 11 factors for withdrawing a plea. We therefore AFFIRM.